1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    P. CRAIG CARDON, Cal Bar No. 168646
2   BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
    PATRICK RUBALCAVA, Cal Bar No. 335940
3   1901 Avenue of the Stars, Suite 1600
    Los Angeles, California 90067-6055
4   Telephone:    310.228.3700
    Facsimile:    310.228.3701
5   Email:        ccardon@sheppardmullin.com
                  baigboboh@sheppardmullin.com
6                 prubalcava@sheppardmullin.com

7   *Attorneys for Defendant*
    SEPHORA USA, INC.

8

9                   **UNITED STATES DISTRICT COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11  LINDA CAMP, individually and on behalf of       Case No. 3:24-cv-07330-TLT
    all others similarly situated,
12                                                  *Assigned to the Hon. Trina L. Thompson*
                    Plaintiff,
13                                                  **DEFENDANT SEPHORA USA, INC.'S:**
            v.
14                                                  **(1)    NOTICE OF MOTION AND**
    SEPHORA USA, INC.,                                      **MOTION TO DISMISS CLASS**
15                                                          **ACTION COMPLAINT; AND**
                    Defendant.
16                                                  **(2)    MEMORANDUM OF POINTS AND**
                                                            **AUTHORITIES IN SUPPORT**
17                                                          **THEREOF**

18                                                  [*Declaration of Benjamin O. Aigboboh*,
                                                    *Request for Judicial Notice*, and [*Proposed*]
19                                                  *Order* submitted concurrently herewith]

20                                                  Hearing:
                                                    Date:           January 28, 2025
21                                                  Time:           2:00 p.m.
                                                    Courtroom:      9
22
                                                    Complaint Filed:        September 18, 2024
23                                                  Complaint Removed:      October 21, 2024
                                                    Trial Date:             None Set
24

25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2025 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9 on the 19th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Trina L. Thompson presiding, Defendant Sephora USA, Inc. ("Sephora") will and hereby does move the Court for an order dismissing Plaintiff Linda Camp's ("Plaintiff") *Class Action Complaint* pursuant Federal Rule of Civil Procedure 12(b)(6).

Sephora's *Motion to Dismiss* ("*Motion*") is made on the grounds that (1) the *Class Action Complaint* fails to state a claim for violation of the Arizona Telephone Utility and Communication Service Records Act, Arizona Revised Statutes § 44-1376 *et seq*. and (2) Plaintiff lacks statutory standing to pursue a claim for violation of the statute.

The *Motion* is based on this *Notice of Motion* and *Motion*, the attached *Memorandum of Points and Authorities*, the *Request for Judicial Notice* and *Declaration of Benjamin O. Aigboboh* submitted concurrently herewith, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated: December 9, 2024       By   _____
                                              */s/ Benjamin O. Aigboboh*
                                        P. CRAIG CARDON
                                        BENJAMIN O. AIGBOBOH
                                        PATRICK RUBALCAVA

                                        *Attorneys for Defendant*
                                        SEPHORA USA, INC.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................6

I.     INTRODUCTION ...............................................................................................................6

II.    RELEVANT ALLEGATIONS ..........................................................................................7

III.   ISSUES TO BE DECIDED ...............................................................................................7

IV.   LEGAL STANDARD ........................................................................................................8

V.    THE *MOTION* SHOULD BE GRANTED .......................................................................8

       A.    Arizona's Telephone, Utility And Communication Service Records Act .................8

       B.    The *Complaint* Should Be Dismissed Because It Fails To State A Claim For Violation Of The TUSCRA ...................................................................................10

             1.    The *Complaint* Does Not Allege Sephora Procured Records From A Communication Service Provider ....................................................10

             2.    The Email-Related Information Allegedly Collected By Sephora Is Not A "Communication Service Record" .....................................14

       C.    The *Complaint* Should Be Dismissed Because Plaintiff Lacks Statutory Standing ...............................................................................................................15

VI.   CONCLUSION ................................................................................................................16

MOTION TO DISMISS CLASS ACTION COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Federal Cases</u>

4

*Barnes v. SunPower Corp.*
  2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ........................................................................... 8

5

*Cetacean Cmty. v. Bush*
  386 F.3d 1169 (9th Cir. 2004) ........................................................................................... 15

6

7

*Emerson v. N. Tr. Corp.*
  2023 WL 11884593 (N.D. Cal. Nov. 15, 2023) ........................................................................... 8

8

9

*Leocal v. Ashcroft*
  543 U.S. 1 (2004) ........................................................................................................ 14

10

11

*Mollaei v. Otonomo Inc.*
  651 F. Supp. 3d 1135 (N.D. Cal. 2023) ................................................................................. 8

12

*Naruto v. Slater*
  2016 WL 362231 (N.D. Cal. Jan. 28, 2016) ........................................................................... 15

13

*Spitzer v. Aljoe*
  2016 WL 3279167 (N.D. Cal. June 15, 2016) ........................................................................... 6

14

15

*Stewart v. Kodiak Cakes, LLC*
  568 F. Supp. 3d 1056 (S.D. Cal. 2021) ................................................................................. 8

16

17

*United States v. Ramirez*
  347 F.3d 792 (9th Cir. 2003) ........................................................................................... 14

18

<u>State Cases</u>

19

*Maricopa Cnty. v. Barkley*
  168 Ariz. 234, 812 P.2d 1052 (Ct. App. 1990) ....................................................................... 12

20

21

*Nicaise v. Sundaram*
  245 Ariz. 566, 432 P.3d 925 (2019) ................................................................................ 12, 13

22

23

*Porter v. Triad of Ariz., L.P.*
  203 Ariz. 230, 52 P.3d 799 (Ct. App. 2002) ......................................................................... 14

24

*Qasimyar v. Maricopa Cnty.*
  250 Ariz. 580, 483 P.3d 202 (Ct. App. 2021) ....................................................................... 12

25

26

*Rasor v. Nw. Hosp., LLC*
  243 Ariz. 160, 403 P.3d 572 (2017) ................................................................................. 13

27

28

*RSP Architects, Ltd. v. Five Star Dev. Resort Cmtys., LLC*
    232 Ariz. 436, 306 P.3d 93 (Ct. App. 2013) ........................................... 12

*Shepherd v. Costco Wholesale Corp.*
    250 Ariz. 511, 482 P.3d 390 (2021) ................................................. 12, 16

*State v. Barnett*
    101 P.3d 646 (Ariz. Ct. App. 2004) ...................................................... 14

Docketed Cases

*Camp v. Sephora USA, Inc.*
    Case No. 3:24-cv-07330 (N.D. Cal.) ....................................................... 6

*Campos v. TJX Companies, Inc.*
    Case No. 1:24-cv-11067 (D. Mass.) ........................................................ 6

*Carbajal v. Gap Inc.*
    Case No. 2:24-cv-01056 (D. Ariz.) ......................................................... 6

*Carbajal v. Home Depot U.S.A., Inc.*
    Case No. 2:24-cv-00730 (D. Ariz.) ......................................................... 6

*Carbajal v. Lowe's Home Centers, LLC*
    Case No. 2:24-cv-01030 (D. Ariz.) ......................................................... 6

*d'Hedouville v. H&M Fashion USA, Inc.*
    Case No. C20243386 (Ariz. Super. Ct. Pima Cnty.) ...................................... *passim*

*McGee v. Nordstrom, Inc.*
    Case No. 2:23-cv-01875 (W.D. Wash.) ..................................................... 6

*Mills v. Saks.com LLC*
    Case No. 1:23-cv-10638 (S.D.N.Y.) ......................................................... 6

*Spector v. Williams-Sonoma, Inc.*
    Case No. 4:24-cv-06617 (N.D. Cal.) ........................................................ 6

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rule of Civil Procedure
    Rule 12(b)(6) ................................................................................ 7, 8

MOTION TO DISMISS CLASS ACTION COMPLAINT

State: Statutes, Rules, Regulations, Constitutional Provisions

Arizona Revised Statutes
  § 13-3001 *et seq.* .......................................................................................... 12
  § 13-3018 ........................................................................................................ 12
  § 13-3018(A) ................................................................................................... 12
  § 13-3018(B) ................................................................................................... 12
  § 13-3018(G) ................................................................................................... 12
  § 44-1376 *et seq* ........................................................................................ 6, 8
  § 44-1376.01 ........................................................................................ 11, 12, 14
  § 44-1376.01(A)(1) ............................................................................... 9, 10, 15
  § 44-1376.01(A)(2) ...................................................................................... 9, 10
  § 44-1376.01(A)(3) ...................................................................................... 9, 10
  § 44-1376.01(B) ........................................................................................... 9, 10
  § 44-1376.03 ...................................................................................................... 9
  § 44-1376.04 ......................................................................................... 9, 10, 13
  § 44-1376.04(A) .............................................................................................. 15
  § 44-1376.05 ................................................................................................. 9, 10

Other Authorities

2006 Regular Session Laws, State of Arizona House of Representatives
  House Bill 2785, Chapter 260, § 1 ...................................................... 8, 9, 10, 16

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3

4

5

6

7

8

9

10

11

12

Two decades ago, the Arizona Legislature faced a very specific problem:  data brokers were impersonating Arizona residents to obtain their personal information from their telephone companies, public utilities, or communication service providers and then selling the fraudulently-obtained information.  The legislature enacted the Arizona Telephone, Utility, and Communication Service Records Act, Arizona Revised Statutes § 44-1376 *et seq.* (the "TUSCRA" or "Act"), to combat this "pretexting."  Now, nearly two decades later, plaintiffs have filed class action suits around the country seeking to expand the narrow statute to prohibit—and, in fact, *criminalize*—routine commercial behavior like using pixels in connection with marketing emails.[1]  They do this in the hopes of obtaining windfall judgments (the Act mandates a minimum of $1,000 per violation) for conduct the statute does not, and was not intended to, cover—let alone criminalize.

13

14

15

16

17

18

19

20

21

22

Defendant Sephora USA, Inc. ("Sephora") sends marketing emails to customers who request them.  These emails contain software code referred to as "pixel" that informs Sephora how recipients engaged with the emails (if at all)—*e.g.*, whether recipients opened the emails or clicked links in the emails.  Plaintiff Linda Camp ("Plaintiff") alleges that this violates the TUSCRA.  Until the recent wave of cases, no one had ever asserted that the two-decades old Act applied to this standard commercial practice (or anything like it).  To date, the one court that has considered "this expansive interpretation of the statute" has rejected it.  *d'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386, *Order* at 4 (Ariz. Super. Ct. Pima Cnty. Oct. 11, 2024); *see also Spitzer v. Aljoe*, 2016 WL 3279167, at *12 (N.D. Cal. June 15, 2016), *aff'd*, 734 Fed. Appx. 457 (9th Cir. 2018) ("Federal courts may consider unpublished state cases as persuasive authority")

23

24

25

26

27

28

---

[1]   *See, e.g.*, *Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:24-cv-00730 (D. Ariz.); *Carbajal v. Gap Inc.*, Case No. 2:24-cv-01056 (D. Ariz.); *Carbajal v. Lowe's Home Centers, LLC*, Case No. 2:24-cv-01030 (D. Ariz.); *Spector v. Williams-Sonoma, Inc.*, Case No. 4:24-cv-06617 (N.D. Cal.); *Camp v. Sephora USA, Inc.*, Case No. 3:24-cv-07330 (N.D. Cal.); *Campos v. TJX Companies, Inc.*, Case No. 1:24-cv-11067 (D. Mass.); *Mills v. Saks.com LLC*, Case No. 1:23-cv-10638 (S.D.N.Y.); *McGee v. Nordstrom, Inc.*, Case No. 2:23-cv-01875 (W.D. Wash.).

1  (citing *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)).[2]

2  This Court should do the same and grant Sephora's *Motion to Dismiss Class Action Complaint*.

## II.    RELEVANT ALLEGATIONS

4  Sephora—"a multinational retailer of personal care and beauty products"—disseminates

5  marketing emails to drive sales.  ECF No. 1-1 ¶ 2.  Sephora allegedly "embeds hidden spy pixel

6  trackers" within these emails which "capture and log sensitive [email] information" like the time

7  an email was opened and how long it took the recipient to read it.  *Id.* ¶ 4.

8  Plaintiff, an Arizona resident, has allegedly received promotional emails from Sephora

9  within the past two years.  ECF No. 1-1 ¶ 7.  Each time Plaintiff opened one, Sephora allegedly

10  "procured her sensitive email information including the time and place she opened and read the

11  messages, how long she read an email, her location, her email client type, her IP address, her

12  device information and whether and to whom the email was forwarded."  *Id.* ¶ 8.  Plaintiff was

13  allegedly unaware of and never consented to Sephora's collection of this information.  *Id.* ¶¶ 9, 50.

14  Based on these allegations, the *Class Action Complaint* ("*Complaint*") asserts a single

15  cause of action for violation of the TUSCRA on behalf of Plaintiff and "all persons within Arizona

16  who have opened a marketing email containing a tracking pixel from" Sephora.  ECF No. 1-1

17  ¶¶ 1, 51, 59-69.

## III.    ISSUES TO BE DECIDED

19  1.    Whether the *Complaint* should be dismissed pursuant to Federal Rule of Civil

20  Procedure 12(b)(6) for failure to state a claim for violation of the TUSCRA because (a) it does not,

21  and cannot allege, that Sephora procured information from Plaintiff's communication service

22  providers and (b) the email-related information allegedly collected by Sephora is not a

23  "communication service record" under the Act.

24  2.    Whether the *Complaint* should be dismissed because Plaintiff lacks statutory

25  standing to pursue a claim for violation of the TUSCRA.

26

27  [2]  For the Court's convenience, the October 11, 2024 *Order* in *d'Hedouville* is attached to the
concurrently-filed *Declaration of Benjamin O. Aigboboh* as Exhibit G.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.    LEGAL STANDARD

"Under Rule 12(b)(6), a party may move to dismiss for 'failure to state a claim upon which relief can be granted.'"  *Mollaei v. Otonomo Inc.*, 651 F. Supp. 3d 1135, 1138 (N.D. Cal. 2023) (Thompson, J.) (quoting Fed. R. Civ. P. 12(b)(6)).  "To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's 'factual allegations [in the complaint] 'must…suggest that the claim has at least a plausible chance of success.'"  *Emerson v. N. Tr. Corp.*, 2023 WL 11884593, at *3 (N.D. Cal. Nov. 15, 2023) (Thompson, J.) (quoting *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)).  A court "must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'"  *Id*. (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).  Courts "need not, however, accept as true pleadings that are no more than legal conclusions or the ''formulaic recitation of the elements' of a cause of action.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Barnes v. SunPower Corp.*, 2023 WL 2592371, at *2 (N.D. Cal. Mar. 16, 2023) ("Mere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss'") (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

"In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts."  *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1064 (S.D. Cal. 2021) (citing *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).  "'A court may, however, consider…documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]'"  *Id*. (quoting *Ritchie*, 342 F.3d at 908).

### V.    THE *MOTION* SHOULD BE GRANTED

#### A.    Arizona's Telephone, Utility And Communication Service Records Act

The TUSCRA was enacted in 2006 to specifically combat "pretexting," *i.e.*, the impersonation of a telephone company customer to obtain that customer's telephone records from the telephone company to then sell on the Internet.  *See*, *e.g.*, *Declaration of Benjamin O. Aigboboh* ("*Aigboboh Decl.*") ¶ 2, Ex. A (AZ H.R. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006)) (noting "there are over 40 'data broker' companies that…have fraudulently gained access to telephone records by posing as the customer" and "then offer[ed] the records for sale on the

Internet without the customer's consent or knowledge, a practice known as 'pretexting'"). The Act, therefore, was adopted to "prohibit the[se] unauthorized sales of telephone records" (*id.* ¶ 3, Ex. B (AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (Apr. 24, 2006)) by, *inter alia*, prohibiting the knowing procurement of a telephone record of an Arizona resident without consent or through fraud, and requiring telephone companies to establish reasonable procedures to protect customers against unauthorized or fraudulent disclosure of telephone records (*id.* 4, Ex. C (2006 Ariz. Legis. Serv. Ch. 260 § 1 (H.B. 2785)).

Thus, in its original form, the TUSCRA prohibited a person from: (1) "knowingly procuring, attempting to procure, soliciting or conspiring with another to procure a telephone record…by fraudulent, deceptive or false means"; (2) "knowingly selling or attempting to sell the telephone record…without authorization"; and (3) "receiving a telephone record…knowing [it had] been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." *Aigboboh Decl.* ¶ 4, Ex. C (2006 Arizona Legis. Serv. Ch. 260 (H.B. 2785) § 44-1376.01(A)(1)–(3)). Any person who violated any of these prohibitions was subject to civil suit and criminal penalties. *Id.* at §§ 44-1376.04, 44.1376.05. The Act also "require[d] telephone companies that maintain[ed] telephone records [of an Arizona resident] to establish reasonable procedures to protect against unauthorized or fraudulent disclosure of telephone records that could result in a substantial harm or inconvenience to any customer." *Id.* at § 44-1376.01(B).[3]

The Arizona Legislature amended the Act in 2007 to "expand" its coverage to "public utility" and "communication service" records. *Aigboboh Decl.* ¶ 6, Ex. E (AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (Mar. 2, 2007)). As before, the intent was to combat "pretexting," *i.e.*, "the practice of getting personal information under false pretenses." *Id.* ¶ 5, Ex. D (AZ H.R. B.

---

[3]  The Act defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Aigboboh Decl.* ¶ 4, Ex. C (2006 Arizona Legis. Serv. Ch. 260 (H.B. 2785) § 44-1376(4)). And a "telephone company" was defined as any person providing commercial telephone services to a customer. *Id.* § 44-1376(3).

Summ., 2007 Reg. Sess. H.B. 2726 (Feb. 22, 2007)); *see also id.* ¶ 7, Ex. F (AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007)).  There have been no further amendments of the Act.

As such, the TUSCRA, as amended, prohibits a person from:  (1) "[k]nowingly procur[ing], attempt[ing] to procure, solicit[ing] or conspir[ing] with another to procure a public utility record, a telephone record or communication service record of any [Arizona] resident…without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means"; (2) "[k]nowingly sell[ing] or attempt[ing] to sell a public utility record, a telephone record or communication service record of any [Arizona] resident"; and (3) "receiving a public utility record, a telephone record or communication service record of any [Arizona] resident…knowing that the record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means."  Ariz. Rev. Stat. §§ 44-1376.01(A)(1)-(3).  As before, the statute subjects any violator to civil suit and criminal penalties. *Id.* §§ 44-1376.04, 44.1376.05.  And, as before, the Act requires recordholders to "establish reasonable procedures to protect against unauthorized or fraudulent disclosure of…records that could result in a substantial harm or inconvenience to any customer."  *Id.* § 44-1376.01(B).

**B.    The *Complaint* Should Be Dismissed Because It Fails To State A Claim For Violation Of The TUSCRA**

The *Complaint* alleges Sephora violated the TUSCRA by using pixels embedded in marketing emails Plaintiff requested to "procure[]" Plaintiff's "communication service records" from her without her consent.  ECF No. 1-1 ¶¶ 59-69.[4]  This claim fails because the Act:  (1) only applies to information procured from a provider of a communication service; and (2) does not apply to the email-related information at issue.

**1.    The *Complaint* Does Not Allege Sephora Procured Records From A Communication Service Provider**

The *Complaint*'s allegation that Sephora procured "communication service records" from

---

[4] The *Complaint* does not allege Sephora knowingly sold, attempted to sell, or received any such record.  ECF No. 1-1 ¶¶ 59-69.

Plaintiff (ECF No. 1-1 ¶ 64) is not sufficient to state a claim for violation of the TUSCRA because "communication service records" under the Act are and can only be records maintained by communication service providers such as internet service providers or wireless data carriers. The Act's plain language makes this clear. It defines "[c]ommunication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

Ariz. Rev. Stat. § 44-1376(1). This confirms that "communication service record" refers to certain information of the "subscriber" to a particular "communication service"—"subscriber information" only a provider of communication service such as an internet service provider would have. For example, only a communication service provider would have records of a communication service subscriber's "billing or installation address" for the communication service, "length of [the communication] service," and "payment method" for the communication service. By way of further example, only a communication service provider would have records of the "nature of the communication service provided" to the communication service subscriber.

Plaintiff is not a provider of a communication service; she is an individual who requested and received marketing emails from Sephora. ECF No. 1-1 ¶ 7. Any email-related information Sephora allegedly procured from Plaintiff cannot be a "communication service record" for purposes of the Act.[5] And there is no allegation that Sephora procured the email-related information from one of Plaintiff's actual communication service providers. *d'Hedouville*, Case No. C20243386, *Order* at 3 (dismissing TUSCRA claim because, *inter alia*, plaintiff did not allege retailer "procured his communication service records that were retained by [a] communication service provider"). The statute, therefore, does not and cannot apply. *Id.*

---

[5] Similarly, Sephora is not a provider of any communication service; it is a retailer who is a party to emails Plaintiff requested. ECF No. 1-1 ¶ 2. As such, information Sephora collects about its own emails cannot be a "communication service record." *d'Hedouville*, Case No. C20243386, *Order* at 3 (holding that information retailer collects about its own emails cannot be "communication service records").

1    This conclusion is supported by another Arizona statute governing communication service

2    records—Arizona's Eavesdropping and Communication Act, codified at Ariz. Rev. Stat. § 13-

3    3001 *et seq.* ("ECA").  *See, e.g., Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 515, 482

4    P.3d 390, 394 (2021) ("In construing a specific provision, we may also consider similar statutes

5    for guidance"); *Nicaise v. Sundaram*, 245 Ariz. 566, 568, 432 P.3d 925, 927 (2019) (Arizona

6    courts "consider[] related statutes on the same subject" when "interpret[ing] statutory language").

7    Section 13-3018 of the ECA, which was enacted in 2000, authorizes prosecutors to issue to

8    subpoenas "to all communication service providers that do business in [Arizona] or that furnish

9    communication services to persons within [Arizona]" to obtain "communication service

10   records[.]"  Ariz. Rev. Stat. § 13-3018(A)-(B).  Its definition of "communication service records"

11   is the same as the TUSCRA's definition of "communication service record."  *Compare id.* § 13-

12   3018(G) *with id.* § 44-1376(1).  And it makes clear that "communication service records" are

13   records held by a "communication service provider."  *Id.* § 13-3018; *see also* Ariz. Rev. Stat. §

14   13-3001 (defining "communication service provider" to mean "any person who is engaged in

15   providing a service that allows its users to send or receive oral, wire or electronic communications

16   of computer services").

17       There is no reason to believe the Arizona Legislature imported the ECA's definition of

18   communication service records into the TUSCRA seven years later but intended the term as used

19   in the Act to have a significantly different (and significantly broader) meaning than it does in the

20   ECA.  *See RSP Architects, Ltd. v. Five Star Dev. Resort Cmtys., LLC*, 232 Ariz. 436, 439, 306

21   P.3d 93, 96 (Ct. App. 2013) (courts "presume the legislature is aware of existing statutes when it

22   enacts a new one" and "must assume that when the legislature used the same language" in a later

23   statute, "it knew and intended that the latter statute would" be subject to the same limitations as

24   the earlier statute).  Indeed, to adopt the *Complaint*'s definition would be to improperly "interpret

25   the legislature's use of the identical phrase in two statutes relating to the same general subject

26   matter as having two entirely different meanings."  *Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 238,

27   812 P.2d 1052, 1056 (Ct. App. 1990); *see also Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 587,

28   483 P.3d 202, 209 (Ct. App. 2021) ("a word or phrase used in related statutes should be construed

1   to bear the same meaning throughout"). *d'Hedouville*—the only decision of which Sephora is

2   aware that has considered a pixel claim under the Act—concluded this would be improper and

3   held that the ECA's "definition of communication service provider…should be read in harmony

4   with the definitions in [the TUSCRA] because the statutes are of a related subject and define

5   'communication service record' with identical descriptions." *d'Hedouville*, Case No. C20243386,

6   *Order* at 3.

7        Even if there were some ambiguity in the TUSCRA, the interpretation of "communication

8   service record" to mean information held by a communication service provider is the only one that

9   makes sense in the context of the Act's history and narrow purpose. *See*, *e.g.*, *Rasor v. Nw. Hosp.,*

10  *LLC*, 243 Ariz. 160, 164, 403 P.3d 572, 576 (2017) ("Where the meaning is unclear from language

11  and context, [Arizona] courts may employ secondary tools, such as considering legislative

12  history"). The Act is not a general or catch-all privacy statute. It is, instead, intended to protect

13  privacy by stopping "pretexters" from posing as communication service subscribers in order to

14  obtain information about those subscribers from the provider of the communication service.

15  Sephora is not a "pretexter" using fraudulent means to obtain Plaintiff's subscriber information

16  from the provider of her communication service. It is a party to the communications and is

17  allegedly creating records of those communications by collecting information about them. This

18  conduct bears no resemblance to the "pretexting" the Act was intended to prevent.

19       The *Complaint* would have the Court find that the Act is an expansive privacy statute that

20  applies regardless of from where the alleged "communication service record"—here, mere

21  information about an email collected by one of the parties to it—was procured. This would

22  improperly render superfluous the words "communication service" in the term "communication

23  service record." *See*, *e.g.*, *Nicaise*, 245 Ariz. at 568 ("A cardinal principle of statutory

24  interpretation is to give meaning, if possible, to every word and provision so that no word or

25  provision is rendered superfluous"). It would ignore that the other categories of "record"

26  governed by the Act include the modifiers to limit the definition by the entity that holds the

27  records. For example, the Act defines "public utility record" to include "customer information"

28  like "name, billing or installation address, length of service, [and] payment method[.]" Ariz. Rev.

Stat. § 44-1376(4). This is the same as the "subscriber information" in a "communication service record." Ariz. Rev. Stat. § 44-1376(1). Thus, the only way to read these two defined terms is for this identical information to be a "public utility record" when included in a record created and held by a public utility and a "communication service record" when included in a record created and held by a communication service provider. And the broad interpretation of the TUSCRA advanced by Plaintiff would lead to absurd results including by, *inter alia*, criminalizing routine conduct such as creating and maintaining records of whether an email was opened or when someone communicated with the sender by clicking a provided link. *See*, *e.g.*, *Porter v. Triad of Ariz., L.P.*, 203 Ariz. 230, 233, 52 P.3d 799, 802 (Ct. App. 2002) ("statutes must be given a sensible construction which will avoid absurd results") (internal quotations omitted).[6]

## 2. The Email-Related Information Allegedly Collected By Sephora Is Not A "Communication Service Record"

Even if the email-related information Sephora allegedly procured from Plaintiff about its own emails were the subject of the TUSCRA, the Act claim would still fail because this information does not fall within the statutory definition of a "communication service record." Again, the Act defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

Ariz. Rev. Stat. § 44-1376(1). Missing from this definition is the email-related information Sephora allegedly collected such as "the time and place recipients open and read their messages,

---

[6] Moreover, to the extent there is ambiguity in the Act's plain language, the broad reading advocated for by Plaintiff would run afoul rule of the rule of lenity, which requires that statutes with criminal penalties—like the Act—be interpreted narrowly and in a defendant's favor. *See*, *e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (the "rule of lenity applies" where a statute "has both criminal and noncriminal applications"); *United States v. Ramirez*, 347 F.3d 792, 802 (9th Cir. 2003) ("The rule of lenity favors...a narrow construction"); *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004) ("The rule of lenity requires that" courts "resolve all doubts in the defendant's favor").

1   how long it takes the recipients to read the email, recipients' location, recipients' email client type,

2   recipients' IP address, recipients' device information and whether and to whom the email was

3   forwarded to." ECF No. 1-1 ¶ 4. Nothing in the Act's plain language indicates—or even

4   reasonably implies—that this email-related information falls within the definition of

5   "communication service record." It is unsurprising, then, that the *Complaint* merely concludes

6   that Sephora procured Plaintiff's "customer service records" without identifying the categories of

7   information enumerated by the Act into which the email-related information falls. *See*, *e.g.*, ECF

8   No. 1-1 ¶¶ 59-69. This is because, as the *d'Hedouville* concluded, "the information at issue

9   here—when and how an email was opened, how long it was opened, what device was used, the

10  associated IP address of the recipient, and whether it was forwarded—is not a 'communication

11  service record'" under the Act. *d'Hedouville*, Case No. C20243386, *Order* at 4.

12  **C.    The *Complaint* Should Be Dismissed Because Plaintiff Lacks Statutory Standing**

13          "A plaintiff seeking redress for a statutory violation must establish statutory standing."

14  *Naruto v. Slater*, 2016 WL 362231, at *2 (N.D. Cal. Jan. 28, 2016), *aff'd*, 888 F.3d 318 (9th Cir.

15  2018). Statutory standing exists "when a particular plaintiff has been granted a right to sue by the

16  specific statute under which he or she brings suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175

17  (9th Cir. 2004) (internal citations and quotations omitted). The legislature must "make its

18  intentions clear before [the courts] will construe a statute to confer standing on a particular

19  plaintiff." *Id.*

20          Only a "customer whose communication service records…were procured…in violation" of

21  the TUSCRA has standing pursue a civil action. Ariz. Rev. Stat. § 44-1376.04(A). Read

22  logically, this refers to a "customer" of a communication service whose information was procured

23  from the service provider without authorization or through fraudulent means. *d'Hedouville*, Case

24  No. C20243386, *Order* at 3 (holding that Section 44-1376.04(A) of the Act "contemplates a

25  customer, or subscriber, of a communication service"); *see also* Ariz. Rev. Stat. § 44-

26  1376.01(A)(1) (prohibiting procuring records "without the authorization of the customer to whom

27  the record pertains"). The *Complaint* does not allege that Plaintiff is a "customer" of

28  communication service. And, as set forth above, the *Complaint* does not allege that Sephora

-15-                                     Case No. 3:24-cv-07330-TLT

procured the email-related it allegedly collected in connection with its own communications from a communication service provider. The claim for violation of the Act, therefore, fails for lack of statutory standing. *d'Hedouville*, Case No. C20243386, *Order* at 3.

Even if "customer" were interpreted to mean the "customer" of the person allegedly procuring the records in violation of the Act (which would make no sense), the *Complaint* would still fail to state a claim because it does not allege—even in conclusory fashion—that Plaintiff is a Sephora "customer." It merely alleges that Plaintiff received emails from Sephora. ECF No. 1-1 ¶¶ 7-9. But Sephora's product is not emails; it is "personal care and beauty products." *Id.* ¶ 2; *see also Aigboboh Decl.* ¶ 9, Ex. H (Dictionary.com) (defining "customer" as a "person who purchases goods or services from another; buyer; patron"); *id.* ¶ 10, Ex. i (Merriam Webster) (defining "customer" as "one that purchases a commodity or service"); *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 515, 482 P.3d 390, 394 (2021) (Arizona courts "may consider dictionary definitions where a statute does not define a term"). And the *Complaint* does not allege that Plaintiff ever purchased any such products from Sephora. *d'Hedouville*, Case No. C20243386, *Order* at 3 ("Plaintiff has not alleged that he is a customer of H&M because he does not claim that he has purchased any item from H&M. Even if he had, it would not change the outcome because the act contemplates a customer, or subscriber, of a communication service").

## VI.    CONCLUSION

For the foregoing reasons, Sephora respectfully requests that the Court grant the *Motion*.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  December 9, 2024          By  _____
                                              */s/ Benjamin O. Aigboboh*
                                           P. CRAIG CARDON
                                           BENJAMIN O. AIGBOBOH
                                           PATRICK RUBALCAVA

                                           *Attorneys for Defendant*
                                           SEPHORA USA, INC.

SMRH:4881-1627-9538.6