**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA CAMP, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEPHORA USA, INC.,<br><br>Defendant. | Case No. 3:24-cv-07330-TLT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: January 28, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9<br><br>Judge: The Honorable Trina L. Thompson |

# TABLE OF CONTENTS

PAGE(S)


INTRODUCTION ........ 1

FACTS ........ 1

ARGUMENT ........ 2

I. TUCSRA WAS PASSED IN RESPONSE TO THE SAME EXACT CONDUCT DEFENDANT DID TO PLAINTIFF IN THIS CASE ........ 2

II. PLAINTIFF STATES A CLAIM UNDER TUCSRA ........ 3

A. TUCSRA Has No "Communication Service Provider" Requirement ........ 3

B. The Arizona Eavesdropping And Communication Act Does Not Support Defendant's Argument ........ 5

C. Defendant's Spy Pixels Procured Communication Service Records ........ 7

D. The *Carbajal* Decision Recognized That Spy Pixels Capture Information Falling Within The TUCSRA's Definition of "Communication Service Records" ........ 8

III. PLAINTIFF WAS A CUSTOMER OF HER EMAIL PROVIDER ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*AAA Cab Serv., Inc. v. Indus. Comm'n of Arizona*,
213 Ariz. 342 (Ct. App. 2006) .......... 4

*Carbajal v. Home Depot U.S.A., Inc.*,
2024 WL 5118416 (D. Ariz. Dec. 16, 2024) .......... 5, 6, 8, 9

*City of Flagstaff v. Mangum,*
164 Ariz. 395 (1999) .......... 5

*Harris v. Harris*,
935 F.3d 670 (9th Cir. 2019) .......... 5

*In re Drummond*,
543 P.3d 1022 (Ariz. 2024) .......... 7

*In re Kirkland*,
915 F.2d 1236 (9th Cir. 1990) .......... 4

*Morales v. Archibald*,
246 Ariz. 398 (2019) .......... 6

*Nicaise v. Sundaram*,
432 P.3d 925 (Ariz. 2019) .......... 6

*Pit River Tribe v. Bureau of Land Mgmt.*,
939 F.3d 962 (9th Cir. 2019) .......... 5

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) .......... 10

*Russello v. U.S.*,
464 U.S. 16 (1983) .......... 9

*SolarCity Corp. v. Arizona Dep't of Revenue*,
413 P.3d 678 (Ariz. 2018) .......... 6, 9

*Spinner Corp. v. Princeville Dev. Corp.*,
849 F.2d 388 (9th Cir. 1988) .......... 4

*Stambaugh v. Killian*,
398 P.3d 574 (Ariz. 2017) .......... 6

*State v. Fink in & for Cnty. of Santa Cruz*,
256 Ariz. 387 (Ct. App. 2023) .......... 4

*State v. Garza Rodriguez*,
164 Ariz. 107 (1990) ........ 3

*State v. Medina*,
193 Ariz. 504 (1999) ........ 6

*United States v. LSL Biotechnologies*,
379 F.3d 672 (9th Cir. 2004) ........ 9

*Welch-Doden v. Roberts*,
42 P.3d 1166 (Ariz. Ct. App. 2002) ........ 6

**STATUTES**

18 U.S.C. § 1039 ........ 2

Ariz. Rev. Stat. § 13-3003 ........ 6

Ariz. Rev. Stat. § 13-3018 ........ 6

Ariz. Rev. Stat. § 44-1376 ........ passim

**RULES**

Fed. R. Civ. P. 15(a)(2) ........ 10

**OTHER AUTHORITIES**

H.B. 2726........ 2, 3

Plaintiff Linda Camp ("Plaintiff") respectfully submits this Opposition to Defendant Sephora USA, Inc.'s ("Sephora" or "Defendant") Motion To Dismiss Class Action Complaint (ECF No. 11) (the "Motion" or "MTD").

**INTRODUCTION**

Plaintiff alleges that Defendant, in violation of A.R.S. §§ 44-1376-1376.05 (the Telephone, Utility and Communication Service Records act or "TUCSRA" or the "Statute"), invaded her privacy by unlawfully spying on how she interacts with marketing emails she receives from Sephora, including logging the time and place she read emails from Sephora, through spy pixel tracking software placed without Plaintiff's consent. Sephora exploits this data to build customer profiles so it can sell and market more products to them. Its recipients may be aware that they receive marketing emails, but they are not aware of, nor do they consent to, Defendant's surreptitious tracking of their sensitive reading behavior. TUCSRA is designed to prevent this invasion of privacy.

Defendant's Motion relies heavily on an unreported Arizona trial court's decision in *D'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386, Arizona Superior Court for Pima County (Oct. 11, 2024) (hereinafter "*H&M*") (appeal pending). For the reasons stated below, Plaintiff respectfully maintains that the *H&M* order was erroneously decided because it misconstrues TUCSRA and ignores its legislative history.[1] Therefore, as set forth below, Plaintiff properly alleges a violation of TUCSRA. The Court should deny Defendant's Motion accordingly.

**FACTS**

This case involves Sephora's tracking of Plaintiff's private email reading activity without her consent. Compl. ¶¶ 4, 9, 65. As part of its marketing practices, Sephora captures and logs sensitive information through spy pixels including the time and place subscribers open and read their messages, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information, whether and to whom the email

[1] The statement of recent decision submitted by Defendant, ECF No. 12, *Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:23-cv-00730-DGC (D. Ariz.), is likewise erroneous for the reasons detailed herein.

was forwarded to. *Id.* ¶¶ 4, 8, 62, 65. The use of spy pixels is a "grotesque invasion of privacy" according to industry advocates. *Id.* ¶ 37.

Within the last two years, Plaintiff received promotional emails from Sephora. *Id.* ¶ 7. Plaintiff most recently opened an email from Sephora within the last six months. *Id.* Little did Plaintiff know Sephora was tracking and recording her sensitive email data every time she opened an email from Sephora. *Id.* ¶¶ 8-9, 65. Sephora logged the time and place where Plaintiff opened her emails, how long she read the emails, her location, her email client type, her IP address, and her device information. *Id.* ¶¶ 4, 62. Sephora's invasive surveillance of Plaintiff's sensitive reading habits and clandestine collection of her confidential email records invaded her privacy and intruded upon her seclusion. *Id.* ¶¶ 5, 68. Plaintiff never consented to Sephora's tracking practices. *Id.* ¶¶ 4, 6, 9, 66.

Plaintiff alleges this conduct violates the Statute, A.R.S. § 44-1376.01. *Id.* ¶¶ 1, 59-69. The Statute was enacted in response to the Hewlett-Packard ("HP") pretexting scandal. *Id.* ¶ 33. The HP pretexting scandal involved HP's board surreptitiously procuring the telephone and email records of newspaper reporters in an effort to catch leakers. *Id.* ¶¶ 14-29. Congress held a hearing and brought to light HP's invidious behavior. *Id.* ¶ 30-31. During the hearing, Congress uncovered how HP used spy tracking software to record when, where, and who opened the emails that were sent to the newspaper reporters. *Id.* The discovery shocked the Congressional committee. *Id.* One Congressman called email trackers "equivalent to going through the mail in my mailbox." *Id.* In response, Congress passed the Telephone Records Protection Act, 18 U.S.C. § 1039, and Arizona passed A.R.S. §§ 44-1376-1376.05. *Id.* ¶¶ 32-33.

## ARGUMENT

### I. TUCSRA WAS PASSED IN RESPONSE TO THE SAME EXACT CONDUCT DEFENDANT DID TO PLAINTIFF IN THIS CASE

Defendant argues that the Arizona legislature "enacted the Arizona Telephone, Utility, and Communication Service Records Act to combat 'pretexting.'" MTD at 6 (cleaned up); *see also id.* at 13. This is simply wrong. TUCSRA was passed on the heels of the HP spying scandal. *See* Compl. ¶ 33; Arizona House Bill Summary, 2007 Reg. Sess. H.B. 2726 ("In January 2007,

Congress passed the Telephone Records and Privacy Protection Act …. [the Arizona statute] prohibits a person from knowingly procuring … a communication service record."); *Hewlett-Packard's Pretexting Scandal: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 109th Cong. 16 (2006) (statement of Rep. Blackburn discussing the proposed Consumer Telephone Records Protection Act). A key part of the HP spying scandal included the use of "ReadNotify, a tracker that, once embedded into an email, allowed them to track the path the message takes, ***including whether the recipient opens the message***." Compl. ¶ 25 (cleaned up) (emphasis added). The use of ReadNotify is "a technique also employed by some e-mail marketers." *Id.* ¶ 26. The technology used in the HP scandal is identical to the technology alleged in the complaint.

Moreover, the Statute was specifically amended—a year after it was originally passed—to include the term "communication service records." indicating that the Statute is not limited to telephone pretexting. MTD at 9. Why would the statute have been amended if the amendment was not intended to add anything? Rather, it is obvious the Arizona Legislature intended to outlaw the same exact email tracking that was employed by the perpetrators of the HP spying scandal and by Defendant in this case. *See* Arizona House Bill Summary, 2007 Reg. Sess. H.B. 2726; *State v. Garza Rodriguez*, 164 Ariz. 107, 111 (1990) ("[W]e presume that by amending a statute, the legislature intends to change the existing law.").

## II. PLAINTIFF STATES A CLAIM UNDER TUCSRA

### A. TUCSRA Has No "Communication Service Provider" Requirement

Defendant argues that Plaintiff fails to state a claim "because 'communication service records' under the Act are and can only be records maintained by communication service providers such as internet service providers or wireless data carriers." MTD at 11. The problem with this argument, however, is that nothing in the Statute limits it to communication service providers at all. ***The words "communication service provider" do not appear in the statute***. Defendant fails to cite any such "plain language" because none exists.

The Statute prohibits "procur[ing] communication service record[s]." A.R.S. § 44-1376.01(A)(1). Defendant's argument requires the Court to read in words not present in TUCSRA.

That is impermissible. *AAA Cab Serv., Inc. v. Indus. Comm'n of Arizona*, 213 Ariz. 342, 344 (Ct. App. 2006) ("This court cannot write a term into the statute that the legislature did not include.").

Because the Arizona Supreme Court and the Arizona Court of Appeals have not yet applied Arizona law to the circumstances of this case, "a federal court must predict how the highest state court would decide the issue." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (citation omitted). "The unreported decision of a state trial court, however, is not binding on [a federal court] … ." *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 390 n.2 (9th Cir. 1988) (citations omitted). The Arizona Supreme Court would not adopt Defendant's and *H&M*'s reading of TUCSRA.

Moreover, Defendant's interpretation makes no sense. How could a law criminalize a communication service provider from "procur[ing]" the "communication service record" that the provider itself generated? The law is plainly geared towards preventing *others* from accessing this information. Defendant's interpretation is illogical and would render TUCSRA meaningless.

Defendant submits that its interpretation is justified because "only a provider of communication service such as an internet service provider would have" communication service records. MTD at 11. But that misses the point. The purpose of TUCSRA was to restrict this data to the providers that maintain it and prevent the data from being procured by others. TUCSRA explicitly says: "[e]ntities that maintain communication service records … shall establish reasonable procedures to protect against unauthorized or fraudulent disclosure of such records." A.R.S. § 44-1376.01(C). How can TUCSRA be limited to communication service providers when it explicitly acknowledges that they already have the records? Defendant's interpretation defies logic.[2]

Defendant argues that information it allegedly collects about its own emails cannot be a communication service record and that Plaintiff does not allege that Defendant procured this email-related information from one of Plaintiff's actual communication service providers. MTD at 11

[2] Likewise, the rule of lenity does not apply here, *see* MTD at 14 n.6, because "that rule only [applies] when a statute is ambiguous and all other methods of statutory construction have failed. The mere fact a statute is silent as to a particular scenario neither makes it ambiguous nor permits us to read provisions into it." *State v. Fink in & for Cnty. of Santa Cruz*, 256 Ariz. 387 ¶ 9 (Ct. App. 2023) (citations removed). The Statute here is unambiguous.

(citing *H&M*). This does not comport with the text of the Statute. A communication record would be an email, something Defendant already had and was perhaps entitled to possess. Instead, it surreptitiously procured a record it was not entitled to: the communication ***service*** records. Nothing in TUCSRA requires the information to have originated from a communication service provider either. Plaintiff's email service provider (e.g., Gmail or Yahoo) is her communication service provider. Defendant, therefore, by using a spy pixel, is procuring "access logs" or "records of the path of an electronic communication between the point of origin and the point of delivery" and the "nature of the communication service provided [by Gmail or Yahoo], such as … electronic mail." A.R.S. § 44-1376(1); Compl. ¶¶ 4, 8, 62, 65. The "procurer" in violation of the Statute does not itself need to be some sort of "provider," nor were the perpetrators of the HP spying scandal any sort of "provider" of "service."

### B. The Arizona Eavesdropping And Communication Act Does Not Support Defendant's Argument

In *Carbajal v. Home Depot U.S.A., Inc.*, 2024 WL 5118416, at *3 (D. Ariz. Dec. 16, 2024), and in *H&M*, courts reasoned that the TUCSRA solely applies to "communication service providers" even though that requirement is not found anywhere in the text of the Act. This was based on the fact that the Act "used the phrase 'communication service record,' which it lifted verbatim from the ECA, a statute with certain provisions that apply solely to 'communication service providers.'" *Id.* That was impermissible. "It is not a judge's job to add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objective. Instead, we must apply the statute as written." *Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019); *see also Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019) ("It is not our practice to read words into statutory provisions").

To the contrary. The fact that a similar statute has a "communication service provider" requirement but the TUCSRA does not is an indication that the legislature specifically intended for it to not apply to the TUCSRA. As the Supreme Court of Arizona explained, **"[w]here the legislature uses a term within one statute and excludes it from another, the term usually will not be read into the provision from which it was excluded**." *City of Flagstaff v. Mangum,* 164 Ariz. 395, 398 (1999) (emphasis added). Arizona's Supreme Court has repeatedly applied this principle in

comparable scenarios. *State v. Medina*, 193 Ariz. 504, 512 (1999) ("the absence of a knowledge requirement in F(9), when compared to (F)(10), shows that the legislature deliberately intended it to apply whether or not the defendant knows the age of the victim"); *Morales v. Archibald*, 246 Ariz. 398, 401 (2019) ("The legislature has statutorily created a broad private right of action in the context of initiatives and referenda but has declined to do so for recalls. With that background, we will not construe § 19-208.04(B) as implicitly incorporating § 19-122.").

The *Carbajal* decision cites four cases to support its reading of this extra requirement into the TUSCRA, but none of them justify it. 2024 WL 5118416, at *3 (citing *Welch-Doden v. Roberts*, 42 P.3d 1166, 1171 (Ariz. Ct. App. 2002), *Stambaugh v. Killian*, 398 P.3d 574, 575 (Ariz. 2017), *SolarCity Corp. v. Arizona Dep't of Revenue*, 413 P.3d 678, 681 (Ariz. 2018), and *Nicaise v. Sundaram*, 432 P.3d 925, 927 (Ariz. 2019)). These cases generally stand for the proposition that courts may consider other, related statutes in interpreting laws. But none of them permit the court to read additional requirements into statutes merely because they are found elsewhere. In fact, one of the cases explicitly held otherwise. *Stambaugh v. Killian,* 242 Ariz. 508, 511 (2017) ("The court of appeals reasoned that 'location' should be read into subsection (B) because the surrounding subsections reference location. But under traditional methods of statutory interpretation, the opposite is true—the fact that the legislature intentionally used the word 'location' in other parts of the statute and omitted it from subsection (B) suggests that location was not meant to be part of subsection (B).") (citations omitted).

This is also plainly evident from the text of the ECA. The ECA is primarily geared toward the contents of communications rather than their "service records." *See* Ariz. Rev. Stat. § 13-3003 (prohibiting a person from "knowingly open[ing] or read[ing] a sealed letter not addressed to himself"). The only reference to communication service records in the ECA appears in Ariz. Rev. Stat. § 13-3018, which authorizes a prosecutor to "issue a subpoena duces tecum to a communication service provider in order to obtain communication service records." This plainly contemplates that a communication service provider *already has those records*. Nothing about this section suggests that a separate law criminalizing procurement of those records should be limited to communication service providers. If anything, it suggests the exact opposite.

### C. Defendant's Spy Pixels Procured Communication Service Records

Defendant argues that email-related information "does not fall within the statutory definition of a 'communication service record'" because it is "missing" from the definition. MTD at 14 (citing *H&M*). That is wrong. The Statute prohibits the knowing procurement of a "communication service record" of any Arizona resident "without the authorization of the customer." A.R.S. § 44-1376.01(A)(1). And the definition for "communication service record" is very broad:

> "Communication service record" ***includes*** subscriber information, ***including name***, billing or installation address, length of service, payment method, telephone number, ***electronic account identification*** and ***associated screen names***, toll bills or ***access logs***, ***records of the path of an electronic communication between the point of origin and the point of delivery*** and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, ***electronic mail***, paging or other service features.

A.R.S. § 44-1376(1) (emphasis added).

Read in the light most favorable to Plaintiff, Plaintiff properly alleges Defendant procures an "access log" of her email reading habits in order to procure Plaintiff's email reading behavior so it can "measure activity, track and/or measure consumer response to a Campaign and provide estimated live statistics." Compl. ¶¶ 47. This would necessarily require Defendant to correlate Plaintiff's "behavior" with her "name" or "electronic account identification" or "associated screen name" that is traceable to her. Defendant also uses spy pixels to track messages sent and check the behavior of recipients. *Id.* By collecting the time and place each email was opened, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to, Defendant procures "access logs" of the time and place where the email was opened and other email activity. A.R.S. § 44-1376(1); Compl. ¶¶ 4, 62, 65.

The dictionary definition is dispositive here. In Arizona, "[a]bsent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions." *In re Drummond*, 543 P.3d 1022, 1025 (Ariz. 2024). "Access" means "to open or load (a computer file, an Internet site, etc.)" and "Log" means "to make a note or record of: enter details of or about in a log." *Access*, Merriam-Webster, https://www.merriam-webster.com/dictionary/access (last visited

April 12, 2024); *Log*, Merriam-Webster, https://www.merriam-webster.com/dictionary/log (last visited April 12, 2024). Defendant, thus, "logs" each time Plaintiff "accesses" her emails. *See* Compl. ¶ 54 ("[S]py pixel are designed to extract … time ***logs*** of email ***access*** … .") (emphasis added). "Access log" is a computer science term used to describe a file "that records all events related to … user access to a resource on a computer."[3] An access log allows "software developers [and] operation engineers … to monitor how their application is performing, who is accessing it, and what's happening behind the scenes." *Id.* The information collected by an access log includes the date and time of client access, the client IP address or hostname, and username. *Id.* "An access log is a list of all requests for individual files—such as … embedded graphic images and other associated files that get transmitted—that people … have made from a website. … These server logs record the history of page requests made to the server and other pertinent information."[4] This is exactly the kind of information that is captured by email spy pixels. Compl. ¶¶ 34-50.

Defendant also procures the "records of the path of an electronic communication between the point of origin and the point of delivery" by tracking whether an email was forwarded. *See* Compl. ¶ 57 (Defendant's "spy pixels are designed to extract … logs of email forwarding data"); *Id.* ¶¶ 4, 8; *Hewlett-Packard's Pretexting Scandal: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 109th Cong. 754 (2006), ("I think [people's] expectations of privacy is that a corporation would not use tracer technology to try to follow where they send e-mail.") (statement of Rep. Jay Inslee).

### D. The *Carbajal* Decision Recognized That Spy Pixels Capture Information Falling Within The TUCSRA's Definition of "Communication Service Records"

The above-cited *Carbajal* decision explicitly recognizes that the "categories of information listed in the definition" of "communication service records" include "categories that could be said to have been captured by the tracking pixels" but instead solely "refers to records communication service providers maintain about their subscribers." 2024 WL 5118416, at *4. This is highly

[3] Arfan Sharif, *What Is An Access Log*, Crowdstrike (Dec. 21, 2022), https://www.crowdstrike.com/cybersecurity-101/observability/access-logs.

[4] Andrew Zola, *Access Log Definition*, TechTarget, https://www.techtarget.com/searchsecurity/definition/access-log (last updated January 2022).

problematic. As the Arizona Supreme Court stated in a case cited by the *Carbajal* decision itself, "[t]he best indicator of … intent is that statute's plain language … and when that language is unambiguous, we apply it without resorting to secondary statutory interpretation principles." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 (2018). Carbajal's explicit rejection of the plain language of the statute in favor of purported secondary interpretation principles runs afoul of this binding guidance.

Moreover, the statute explicitly limited the definition of "telephone record" to "information that is retained by a telephone company …" A.R.S. § 44-1376(7). No such requirement was included here. See *Russello v. U.S.*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up).

## III. PLAINTIFF WAS A CUSTOMER OF HER EMAIL PROVIDER

Defendant argues Plaintiff lacks standing to bring her claim because "[t]he Complaint does not allege that Plaintiff is a 'customer' of a communication service." MTD at 15. But Plaintiff alleges she "frequently opened emails from Defendant to review promotional materials" and that she "most recently opened one of Defendant's emails within the last six months." Compl. ¶ 7. Of course, in order to receive and open emails, Plaintiff is necessarily a customer of a communication service (e.g. Gmail or Yahoo). To hold otherwise would require the Court to draw all reasonable inferences against her, and at this stage, the Court is "required to 'presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party—Plaintiff." *United States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004) (internal citations and quotations omitted).

Defendant also argues that Plaintiff fails to allege that she is a customer of Sephora. MTD at 16. That is irrelevant. The plain language of the Statute clearly refers to a customer of a service that generates communication service records, *i.e.* Plaintiff's email provider (e.g. Gmail or Yahoo). No allegation of being a customer of Sephora is necessary.

## CONCLUSION

Plaintiff has properly alleged Sephora violates TUCSRA, A.R.S. § 44-1376.01, by unlawfully tracking her email activity, and Plaintiff has standing to bring her claims. The Court should therefore deny Defendant's Motion to Dismiss in full. If the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15(a)(2) to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: December 30, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *\/s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*