SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
PATRICK RUBALCAVA, Cal Bar No. 335940
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
Email: ccardon@sheppardmullin.com
baigboboh@sheppardmullin.com
prubalcava@sheppardmullin.com

*Attorneys for Defendant*
SEPHORA USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

LINDA CAMP, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SEPHORA USA, INC.,

Defendant.

Case No. 3:24-cv-07330-TLT

*Assigned to the Hon. Trina L. Thompson*

**REPLY IN SUPPORT OF DEFENDANT SEPHORA USA, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

[*Reply Declaration of Benjamin O. Aigboboh* and *Request for Judicial Notice* submitted concurrently herewith]

Hearing:
Date: January 28, 2025
Time: 2:00 p.m.
Courtroom: 9

Complaint Filed: September 18, 2024
Complaint Removed: October 21, 2024
Trial Date: None Set

## I. INTRODUCTION

The first court to address Plaintiff's new and novel pixel claim based on her "expansive interpretation" of the TUSCRA held that the Act does not apply.[1] ECF No. 11-1 ¶ 8, Ex. G (*d'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386, Order (Ariz. Super. Ct. Pima Cnty. Oct. 11, 2024)) at 1-4. The second court to address Plaintiff's claim confirmed what the first court found: "[t]he conduct at issue – sending marketing emails and collecting information through tracking pixels – simply is not covered by the TUSCRA." *Carbajal v. Home Depot U.S.A., Inc.*, No. CV-24-00730-PHX-DGC, 2024 WL 5118416, at *5 (D. Ariz. Dec. 16, 2024). In reaching these conclusions, both courts rejected the same arguments Plaintiff offers here and dismissed the pixel claims with prejudice. The Court should do the same.

## II. THE *MOTION* SHOULD BE GRANTED

### A. The Complaint Fails To State A Claim For Violation Of The TUSCRA

A court's "primary goal" in interpreting statutes is "to effectuate the legislature's intent." *Stambaugh v. Killian*, 242 Ariz. 508, 509 (2017) (internal quotations omitted); *see also Carrow Co. v. Lusby*, 167 Ariz. 18, 20 (1990) ("In interpreting statutes, we must determine the intent of the legislature" which "can be discovered by examining the development of a particular statute"); *Mobile Cmty. Council for Progress, Inc. v. Brock*, 119 P.3d 463, 465 (Ariz. Ct. App. 2005) ("In interpreting a statute, our primary goal is to fulfill the purpose of the legislature") (internal quotations omitted). Clearly aware of this fact, Plaintiff tries to convince the Court to be the first to find that the TUSCRA applies to Sephora's alleged use of pixels in marketing emails Plaintiff requested by inventing an alternate history of, and legislative intent behind, the Act. ECF No. 13 at 2:12-3:18. But, contrary to her contentions, the Act was not "passed in response to the exact same conduct [Sephora] did to Plaintiff[.]" *Id*. at 2:23-24.

The Act "c[a]me about due to the proliferation of internet sites…sell[ing]" telephone records and was enacted in 2006 to "prohibit[] the unauthorized sale of [such] telephone records." *Reply Declaration of Benjamin O. Aigboboh* ("*Reply Aigboboh Decl.*") ¶ 2, Ex. A; *see also* ECF

[1] Unless otherwise indicated, capitalized terms are defined as set forth in the *Motion*.

No. 11-1 ¶ 3, Ex. B at 1 ("HB 2785 prohibits the unauthorized sale of telephone records"); *id.* ¶ 2, Ex. A at 1 ("Purpose[:] Prohibits the procurement and sale of telephone records through authorized, fraudulent or deceptive means"). These "data brokers ha[d] falsely gained access to consumer information" in telephone records held by telecommunications companies "by posing as the customer[.]" ECF No. 11-1 ¶ 3, Ex. B at 1. This "practice [was] known as *pretexting*." *Id.* (emphasis in original); *see also id.* ¶ 2, Ex. A at 1 ("data brokers have fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting[]'").

The Federal Communications Commission "launched an investigation" into this "unauthorized procurement and sale of phone records" in January 2006 and, by March 2006, was "investigating numerous companies for allegedly illegally procuring phone records." ECF No. 11-1 ¶ 2, Ex. A at 1. And "[t]elephone service providers, including T-Mobile, Sprint and Cingular, ha[d] taken legal action against [these] data broker companies." *Id.*; *see also Reply Aigboboh Decl.* ¶ 2, Ex. A ("John Thomas, Arizona Competitive Telecommunications Coalition, addressed the committee in support of the bill. He said that several of his companies have already launched civil suits against people stealing the records"). As such, those telephone service providers supported enactment of the Act to deter "persons who procure and sell telephone records through unauthorized, fraudulent or deceptive means." ECF No. 11-1 ¶ 2, Ex. A at 1; *see also Reply Aigboboh Decl.* ¶ 2, Ex. A (noting T-Mobile USA's, Cingular's, Sprint/Nextel's, and Verizon Wireless's "support of H.B. 2785"). The Act was enacted for that purpose in 2006. ECF No. 11-1 ¶ 4, Ex. C at 1; *see also Carbajal*, 2024 WL 5118416, at *2 (as enacted in 2006, the Act "prohibited the practice known as 'pretexting,' where data brokers fraudulently gain access to telephone records by posing as the customer" and "then sell the customer's records without consent").

The Arizona Legislature amended the TUSCRA in 2007 to "expand[]" its coverage—and the "existing crime of falsely procuring, selling, or receiving telephone records"—"to include communication service records and public utility records." ECF No. 11-1 ¶ 6, Ex. E at 1; *see also id.* ¶ 5, Ex. D at 2; ¶ 7, Ex. F at 1. The Act's express purpose, however, remained the prevention

of the sale of personal information obtained using "pretexting," *i.e.*, "the practice of getting personal information under false pretenses." *Id.* ¶ 7, Ex. F at 1; *see also id.* ¶ 5, Ex. D at 1; *id.* ¶ 6, Ex. E at 1; *Carbajal*, 2024 WL 5118416, at *2 (the 2007 amendment "expand[ed] the…Act to include public utility records and communication service records, *protecting these additional records from the practice of pretexting*") (emphasis added).

Plaintiff contends that the fact that the TUSCRA was amended to expand its coverage to include public utility records and communication service records makes "it obvious the Arizona Legislature intended to outlaw the same exact email tracking that was employed by the perpetrators of the HP spying scandal and by [Sephora] in this case." ECF No. 13 at 3:11-18.[2] Not so. There is nothing in the Act's legislative history that supports this conclusion. There are no references to Hewlett-Packard, its "spying scandal," or the email "spy tracking software" it allegedly used. Plaintiff does not cite any such references, instead generally referring (with a "*see*" signal) to an undated "Arizona House Bill Summary[.]" *Id.* But, as set forth above, those summaries merely confirm that the amendment served only to expand the initial prohibition on the use of pretexting to obtain telephone records by including public utility and communication service records to the Act's coverage. ECF No. 11-1 ¶ 5, Ex. D at 2; *id.* ¶ 6, Ex. E at 1.

**1. The *Complaint* Does Not Allege Sephora Procured Records From A Communication Service Provider**

Notwithstanding her attempts to change the TUSCRA's history and purpose, Plaintiff ultimately concedes that the "purpose" of the Act "was to restrict" a communication service record "to the providers that maintain it and prevent [it] from being procured by others." ECF No. 13 at 4:16-17; *see also Carbajal*, 2024 WL 5118416, at *3 (the Act's "clear purpose…is to protect the

---

[2] Plaintiff asserts the addition of the "term 'communication service records'" to the TUSCRA "indicat[es] that [it] is not limited to telephone pretexting." ECF No. 13 at 3:11-13. Contrary to Plaintiff's intimations, though, Sephora has never argued the Act was enacted to combat "telephone pretexting[,]" which is presumably pretexting over a telephone. As originally enacted, the Act criminalized pretexting (whether using a telephone or some other means) to obtain telephone records. It was then amended to add communication service records and public utility records to the "existing crime of falsely procuring, selling, or receiving telephone records[.]" ECF No. 11-1 ¶ 6, Ex. E at 1.

records that…communication service providers…collect about their subscribers"). This is Sephora's point. ECF No. 11 at 8:22-14:10. And the Act fulfills this purpose by criminalizing the unauthorized procurement of a communication service record from a communication service provider.[3] *Id.*; *see also Carbajal*, 2024 WL 5118416, at *4 (the Act "consistently protects subscribers and customers from the unauthorized procurement of their records maintained by telephone companies, public utilities, and communication service providers") (internal citations omitted).

This is confirmed by the TUSCRA's plain language, which defines "communication service record" to mean "subscriber information" only a communication service provider would have. A.R.S. § 44-1376(1); *see also Carbajal*, 2024 WL 5118416, at *4 (finding that the "the definition of 'communication service record' in the [Act] only applies to 'subscriber information'" and that the "focus on 'subscriber' information comports with other portions of the [Act] which refer to the 'customer' of a public utility in the definition of 'public utility record[]'…and to 'the relationship between the telephone company and the customer' in its definition of 'telephone record[]'"). It is further confirmed by Arizona's Eavesdropping and Communication Act, which makes clear that "communication service records"—which are defined identically to "communication service record" in the Act—are records held by a "communication service provider." A.R.S. § 13-3018; *see also Carbajal*, 2024 WL 5118416, at *3 ("the interpretation of the TUSCRA should comport with the" ECA because "[t]he statutes address related subjects and the TUSCRA uses specific language" the legislature "lifted verbatim from the" ECA).[4] And it

[3] Contrary to Plaintiff's contentions, Sephora has never contended that only a communication service provider can violate the TUSCRA. ECF No 13 at 4:10-21, 5:9-11. Anyone can violate the Act if they unlawfully procure a "communication service record" which, as set forth in the *Motion* and below, must be "subscriber information" held by the communication service provider.

[4] Plaintiff's discussion of the ECA (ECF No. 13 at 5:12-6:28) misses the point. The *d'Hedouville* and *Carbajal* courts did not hold that "the TUSCRA solely applies to 'communication service providers[.]'" *Id.* at 5:13-15. Both courts found, correctly, that the interpretation of "communication service record" as used in the Act should comport with its use in the ECA. These courts were not "reading [an] extra requirement into the TUSCRA[.]" *Id.* at 6:7-8. They were correctly determining that the term "communication service records" should be interpreted as it is in the ECA—to refer to records held by communication service providers.

comports with the Act's express purpose and intent of preventing a pre-texter from posing as a customer of a telephone company, public utility, or communication service provider to obtain the customer's information from that company, utility, or provider. ECF No. 11 at 8:22-10:22; Section II.A *supra*.

Despite this, Plaintiff continues to conclude that a communication service record need not be procured from a communication service provider under the TUSCRA. ECF No. 13 at 4:22-5:11. Plaintiff, perhaps realizing this conclusion is unsupported, hedges by contending that Sephora did in fact procure communication service records from her communication service provider—*i.e.*, her unidentified "email service provider." *Id*. Even assuming that the provider of Plaintiff's email is a communication service provider, this *Opposition* contention is not an allegation and cannot forestall dismissal. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to…a memorandum in opposition to a…motion to dismiss") (emphasis in original); *Carbajal*, 2024 WL 5118416, at *5 (refusing to consider identical argument in opposition to Rule 12(b)(6) motion); *Karns & Karns LLP v. Quintessa Mktg., LLC*, No. 2:23-CV-04434-SPG-KS, 2023 WL 9894466, at *5 n.7 (C.D. Cal. July 25, 2023) (a plaintiff "may not make additional allegations for the first time in opposition to a motion to dismiss"). Even more, the contention directly contradicts the *allegation* that Sephora "procure[d]" the email-related information "from Plaintiff[.]" ECF No. 1-1 ¶ 64. Plaintiff is not a provider of a communication service; she is an individual who requested marketing emails from Sephora.

The conclusion that Plaintiff's TUSCRA claim must be dismissed is confirmed by the only decisions to have considered a pixel claim under the Act: (1) the October 11, 2024 order in *d'Hedouville*; and (2) the December 18, 2024 order in *Carbajal*. In *d'Hedouville*, the court held that the Act prohibits procurement of "the records of a communication service [from] an entity that must maintain those records in a reasonable manner as to prevent their authorized or fraudulent disclosure." ECF No. 11-1 ¶ 8, Ex. G at 2-4. And it dismissed an identical Act claim because plaintiff had not alleged that defendant, a retailer that allegedly used pixels in marketing

emails, had "procured…communication service records that were retained by a[] communication service provider." *Id.*

While it is true that *d'Hedouville* is an "unreported Arizona trial court[] decision" (ECF No. 13 at 1:14-16), the Court may consider such an "unpublished state case[] as persuasive authority" (*Spitzer v. Aljoe*, No. 13-cv-05442-MEJ, 2016 WL 3279167, at *12 (N.D. Cal. June 15, 2016), *aff'd*, 734 Fed. Appx. 457 (9th Cir. 2018)). The Arizona Superior Court, however, is not alone in its determination that the TUSCRA applies to the fraudulent procurement of communication service records from a communication service provider. Senior United States District Judge David G. Campbell for the District of Arizona reached the same conclusion in *Carbajal*, holding that "the overall statutory scheme and the statute's specific language make clear that 'communication service record'…refers to records communication service providers maintain about their subscribers" and dismissing plaintiff's Act claim because her complaint did "not allege that [d]efendant"—the retailer Home Depot—"procured records from [p]laintiff's communication service provider." 2024 WL 5118416, at **3-5.

These decisions do not "misconstrue[] the TUSCRA and ignore[] its legislative history." ECF No. 13 at 1:14-18. To find otherwise, the Court would have to reject the interpretation of an *Arizona* statute by two *Arizona* courts. Plaintiff has offered no justification for such a result.

**2. The Email-Related Information Allegedly Collected By Sephora Is Not A "Communication Service Record"**

The TUSCRA defines a "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1). The *Complaint* broadly alleges that Sephora procured Plaintiff's "communication service records" as defined in the Act. ECF No. 1-1 ¶¶ 63-64. Plaintiff has now focused the *Complaint*'s broad and nonspecific allegation, arguing that what Sephora procured when it allegedly collected email-related information (*i.e.*, "the time and place each email was

opened, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to") was "'access logs'" and "the 'records of the path of an electronic communication between the point of origin and delivery[.]" ECF No. 13 at 7:1-8:19. Plaintiff is wrong.

As used in the TUSCRA, the term "access logs" refers to logs of the subscriber accessing the communication service itself, not logs of the subscriber's interactions with a particular email. The Act includes "access logs" with other records of "subscriber information" like "billing or installation address," "length of service," "payment method," "electronic account identification and associated screen names," and "toll bills[.]" These are service-level records maintained by a communication service provider. A.R.S. § 44-1376(1). They are not records of a subscriber's interaction with a particular communication such as when a marketing email was opened (and, notably, individual emails are *opened*, not *accessed*). ECF No. 11-1 ¶ 8, Ex. G at 3 (holding that "'access log,' in context, is logically read as a log of when a customer used a communications service"); *see also Carbajal*, 2024 WL 5118416, at **4-5 (finding, consistent with *d'Hedouville*, that the email-related information allegedly collected is not "a type of access log protected" by the Act) (internal quotations omitted). Plaintiff's attempt to create a new definition of "access logs" by cobbling together dictionary definitions of the separate terms "access" and "log" and two blog posts about "access logs" in other contexts must be rejected. ECF No. 13 at 7:24-8:12.[5]

The same is true of Plaintiff's unexplained argument that Sephora "procures the 'records of the path of an electronic communication between the point of origin and the point of delivery' by tracking whether an email was forwarded." ECF No. 13 at 8:13-19. This argument is irrelevant to Plaintiff's claim, as there is no allegation that Plaintiff forwarded a Sephora marketing email to

[5] While the Court may arguably consider the dictionary definitions if it takes judicial notice of them (which Plaintiff did not seek), it cannot consider the blog posts because they are not in the *Complaint* and, even if the Court could take judicial notice of them (which Plaintiff, again, did not seek), it could not take judicial notice of their purported explanations of "access logs." *See, e.g.*, *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1147-48 (N.D. Cal. 2013) (taking judicial notice of blog post's existence but not any "facts recited therein").

anyone. ECF No. 1-1 ¶ 7. Even so, the argument would still fail. Plaintiff offers no explanation of how whether an email was forwarded qualifies as a record of the "path of electronic communication" between the "point of origin" and "point of delivery" or why the legislature would describe email forwarding this way instead of simply saying that "communication service records" include whether an email was forwarded if that is what it wanted.

Ultimately, Plaintiff cherry-picks words and phrases from the definition of "communication service record" to support her "novel and broad interpretation of the TUSCRA." *Carbajal*, 2024 WL 5118416, at *4. Courts, however, "do not…consider words in isolation when interpreting statutes" (*Estate of Braden v. State*, 228 Ariz. 323, 326 (2011)) or "interpret statutory provisions in a vacuum" (*State v. Sulu-Kerr*, 542 P.3d 1175, 1186 (Ariz. Ct. App. 2024)). Courts interpret statutes "'in view of the entire text, considering the context and related statutes on the same subject.'" *Sulu-Kerr*, 542 P.3d at 1187 (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, 568, (2019)); *see also Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 868 P.2d 997, 999 (Ariz. Ct. App. 1993), *aff'd*, 179 Ariz. 181 (1994) ("Statutory provisions are to be read in the context…of the overall statutory scheme"). Thus, the *d'Hedouville* and *Carbajal* courts' interpretation of the Act is not "highly problematic." ECF No. 13 at 8:20-9:12. Each court correctly found that the plaintiff's myopic focus on the "discrete categories of information" listed in the definition of "communication service record" ignored the "overall statutory scheme and the statute's specific language" and dismissed identical pixel claims. *Carbajal*, 2024 WL 5118416, at *4; *see also* 11-1 ¶ 8, Ex. G at 2-4.[6] Again, this Court should do the same.

---

[6] Plaintiff specifically contends *Carbajal* is "highly problematic" because Judge Campbell found "that the 'categories of information in the definition' of 'communication service records' include 'categories that *could* be said to have been captured by the tracking pixels[.]'" ECF No. 13 at 8:20-9:12 (quoting *Carbajal*, 2024 WL 5118416, at *4) (emphasis added). But Judge Campbell did not find that the email information allegedly collected by pixels definitively falls within any category, let alone qualifies as an access log or record of the path of an electronic communication. On the contrary, Judge Campbell found that "the Arizona legislature could expand TUSCRA to cover information gathered by marketing emails and pixel technology, but it has not done so." *Carbajal*, 2024 WL 5118416, at *4. More importantly, though, Judge Campbell correctly rejected the *Carbajal* plaintiff's attempt to focus on individual words and phrases in derogation of the Act's actual and entire language and the overall statutory scheme. *Id.*

**B. The *Complaint* Should Be Dismissed Because Plaintiff Lacks Statutory Standing**

Plaintiff does not dispute that only a "customer" of a communication service, telephone company, or public utility has standing under the TUSCRA. ECF No. 13 at 9:13-27; *see also* ECF No. 11-1 ¶ 8, Ex. G at 3 (holding that section 44-1376.04(A) of the Act "contemplates a customer, or subscriber, of a communication service").[7] She also concedes the *Complaint* does not allege she is a "customer" of a communication service, telephone company, or public utility. ECF No. 13 at 9:13-27. She, instead, asks the Court to assume she is "necessarily a customer of a communication service (e.g. Gmail or Yahoo)" because the *Complaint* alleges she opened some emails. *Id.*[8] But, although it "accepts all factual inferences favorable to the [p]laintiff at th[e] pleading stage, the Court cannot read into the [c]omplaint missing allegations." *Mahfood v. QVC, Inc.*, No. SACV 06-0659 AG (ANx), 2007 WL 9363986, at *5 (C.D. Cal. Feb. 7, 2007); *see also* *Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021). Dismissal is, therefore, proper.

## III. CONCLUSION

For the foregoing reasons, Sephora respectfully requests that the Court grant the *Motion*.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: January 9, 2025

By */s/ Benjamin O. Aigboboh*

P. CRAIG CARDON
BENJAMIN O. AIGBOBOH
PATRICK RUBALCAVA

*Attorneys for Defendant*
SEPHORA USA, INC.

SMRH:4915-9616-1036.2

[7] Plaintiff does not attempt to reconcile her concession that only a communication service customer has TUSCRA standing with her argument that the Act is concerned with something other than procurement of communication service records from communication service providers.

[8] Again, Plaintiff assumes that an email provider like Gmail is a communication service provider that maintains communication service records. Thus, not only would the Court have to assume Plaintiff is a customer of some unidentified email provider, it would have to assume that the email provider is a communication service that maintains communication service records.